**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

**C.A. No.: 12-60201-Civ-RNS**

| | |
|---|---|
| ION AUDIO, LLC, | : |
| a Florida Limited Liability Company, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| MUSIC GROUP SERVICES US, INC., | : |
| a Washington Corporation, and MUSIC | : |
| GROUP IP LTD. f/k/a RED CHIP | : |
| COMPANY LTD., a British Virgin | : |
| Islands Limited Company, | : |
| | : |
| Defendants. | : |
| | : |

**UNOPPOSED MOTION TO AMEND/MODIFY THE CASE SCHEDULING ORDER,**
**TO SUBSTITUTE AND FOR LEAVE TO FILE THE SECOND AMENDED**
**COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Pursuant to Fed. R. Civ. P. 15, 16, 25, and Local Rule 7.1, the named Plaintiff, ION

Audio, LLC ("Ion"), predecessor in interest to inMusic Brands, Inc. ("inMusic"), hereby moves

for entry of an Order:  (1) amending/modifying the Case Scheduling Order dated June 18, 2012;

(2) granting it leave to substitute inMusic, successor in interest by merger, as the named plaintiff;

and (3) allowing it to file the Second Amended Complaint against Music Group Services US,

Inc. and Music Group IP Ltd. f/k/a Red Chip Company Ltd. ("Music Group" or "Defendants"),

attached hereto as *Exhibit 1*.  Pursuant to Local Rule 7.1(a)(3), the parties conferred and the

Defendants do not oppose the filing of the proposed Second Amended Complaint, which asserts

new causes of action for intentional interference with business relationships and unfair

competition resulting from Music Group's letters to inMusic's retailers that wrongly claim

inMusic's All-Star Guitar infringes the '486 Patent and misrepresent that Music Group could take action against these retailers to "stop" them from selling the All-Star Guitar.

Because the facts supporting inMusic's new causes of action have only recently developed and inMusic promptly sought leave to bring them, good cause exists to modify the Case Scheduling Order to allow this amendment.  In addition, following a merger in September 2012, Ion, the named plaintiff at the time of filing, merged into and with inMusic, which possesses all of the former entity's rights and liabilities.  Accordingly, the Court should permit substitution of inMusic as plaintiff in the action.  Finally, given the liberal standards for amendment under Rule 15, this Court should grant inMusic's request to add facts and causes of action that have arisen since the First Amended Complaint was filed.

## I.  STATEMENT OF FACTS

### A.  The Litigation Between the Parties and the Patent and Invention at Issue

On January 8, 2012, Ion launched its All-Star Guitar at the Consumer Electronics Show ("CES") in Las Vegas, Nevada.  Days later, on January 11, 2012, Music Group hand-delivered to Ion's booth at the show a letter, drafted by its current litigation counsel, in which Music Group asserted its '486 Patent against Ion's All-Star Guitar.  (A copy of Music Group's letter is attached to the proposed Second Amended Complaint as *Exhibit B*.)  On February 3, 2012, Ion filed its original complaint against Music Group, seeking a declaration that the '486 Patent is invalid and/or that its All-Star Guitar does not infringe the '486 Patent.

A few months later, or about April 12, 2012, the European Patent Office (the "EPO") published the claims in Music Group's foreign equivalent of the '486 Patent application.  Many of these claims were the same as the claims it had included in its '486 Patent Application submitted to the U.S. Patent and Trademark Office ("PTO").  The EPO included a European

Search Report ("ESR") in its publication that cited four publications which, in the opinion of the European examiner, rendered the invention not patentable as anticipated and obvious in view of the prior art.  The file history for the '486 Patent here shows that the PTO examiner found only one of these references, but there is no evidence in the file that he substantively considered it.

**B.  Ion becomes inMusic**

On September 28, 2012, Ion entered into an Agreement and Plan of Merger and Consolidation ("Merger Agreement") pursuant to which Ion and several related entities (the "Merged Entities") were merged with and into inMusic.  As the surviving corporation, inMusic, among other things, was provided with "all the rights, privileges, powers and franchises of a public and private nature" and is subject to "all the restrictions, liabilities and duties of" the Merged Entities.  The Articles of Merger were filed publically with the Florida Division of Corporations on that same date.

**C.  Conduct Giving Rise to the New Causes of Action in the Amended Complaint**

Ion began marketing and selling the All-Star Guitar initially online, and then rolled them out in retail stores by September and October 2012.  Rather than filing a counterclaim in this action, however, on December 7, 2012, Music Group sued Ion in the United States District Court for the Western District of Washington alleging that the All-Star Guitar infringes its '486 Patent. Shortly thereafter, on December 20, 2012, Music Group sent letters to several of inMusic's retailers, many of which did not even sell the All-Star Guitar, informing them that MUSIC Group had sued Ion for infringement of the '486 Patent.  Notwithstanding that this case had been pending for nine months, the All-Star Guitar had been on the market for weeks, and Music Group had not sought an injunction – here or in its newly filed case in Washington.  The letter

sent to each retailer was identical in all respects but for the addressee name and salutation, and

read:

> We understand that you sell, distribute, import or otherwise market into the U.S. the All-Star Guitar of ION Audio LLC ("ION Audio").  Please be informed that there is a pending infringement suit on [the '486 Patent] between MUSIC Group and ION Audio in the United States District Court in Seattle, Washington.
>
> We understand that you may not be aware of the U.S. Patent, which was recently issued by the U.S. Patent and trademark office.  We, therefore, take this opportunity to provide you with a copy thereof.  The U.S. Patent gives the MUSIC Group the exclusive right to stop ION Audio from making, using selling, offering to sell and importing products into the U.S. that violate our patent rights."

A sampling of these letters is attached to the proposed Second Amended Complaint as *Exhibit C*. Sent in the high point of the busiest retail season of the year, Music Group's goal was clear:  to kill the All-Star Guitar product and chill inMusic's relationship with its retailers in the process. By the time inMusic learned of the letters, Music Group hoped it would be too late for it to assuage fears and resume sales.

The letters, in fact, had their intended effect.  QVC "exercised its right to return the [All-Star Guitar] product until the outcome of the pending suit(s)."  *See* QVC's January 29, 2013 letter to Music Group, attached hereto as *Exhibit 2*.  Many others, including Bed Bath & Beyond and Wal-Mart Stores, in addition to QVC, sought indemnification from inMusic directly or through its distributors.  *See, e.g.*, January 28, 2013 letter from D. Rasp, Counsel to Bed Bath & Beyond, attached hereto as *Exhibit 3*.  inMusic lost at least sales and profits as a direct result of Music Group's intentional interference with its business relationships and unjust completion.

Music Group's mass mailing to inMusic's retailers was pursued by it in bad faith and to harm inMusic.  In fact, its recently produced infringement claim charts disclose that Music Group's infringement theories related to the All-Star Guitar are no more than a recitation of the

'486 claim language coupled with conclusory statements that the All-Star Guitar contains the same limitations.  Music Group simply had no legitimate infringement theories when it sent the letters and had every reason to question the validity of the '486 patent claims.

## II.  ARGUMENT

Rules 15 and 16 of the Federal Rules of Civil Procedure guide a court's determination of whether to allow amendment to a complaint.  *Nobles v. Rural Cmty. Ins. Serv.*, 303 F.Supp.2d 1279, 1283 (M.D. Ala. 2004).  Rule 16 provides that a party may amend after a scheduling order deadline when the party can demonstrate "good cause" for its inability to meet the pretrial schedule, despite its diligence, and the judge consents to the motion.  Fed. R. Civ. P. 16(a)(4); *see also Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998).  Rule 15 generally provides that "[a] party may amend the party's pleading … where justice so requires."  Fed. R. Civ. P. 15.  Finally, Federal Rule of Civil Procedure 25(c) expressly provides, "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."  Plaintiff's request for leave to amend its complaint to substitute inMusic, the proper party plaintiff that suffered damages as a result of Music Group's action after plaintiff's corporate merger, and to assert additional claims against Music Group for those actions comports with all of these rules and applicable law construing them.

### A.  Good Cause Exists to Modify the Case Scheduling Order

The Eleventh Circuit has identified three factors to consider when ascertaining a party's diligence in the Rule 16 context: "(1) [whether] the party failed to ascertain facts prior to filing the complaint and to acquire information during the discovery period; (2) [whether] the information supporting the proposed amendment was available to the party; and (3) even after

acquiring information, [whether] the party delayed in asking for amendment."  *Pioneer Int'l (USA), Inc. v. Reid*, No. 2:07-cv-84, 2007 WL 4365637, at *2 (M.D. Fla. Dec. 12, 2007)(citing *Lord v. Fairway Elec. Corp.*, 223 F.Supp.2d 1270, 1277 (M.D. Fla. 2002); *Sosa*, 133 F.3d at 1418-19).  "A lack of diligence on the part of the party seeking modification ends the good cause inquiry."  *Id.; see also S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241-42 n.3 (11th Cir. 2009) (the inquiry also will end when a party has full knowledge of the facts before the scheduling deadline passed or when it fails to seek information before the deadline).

Here, inMusic's request for leave to file the Second Amended Complaint is predicated on Music Group's December 2012 letters to its retailers; the resulting damages from those letters, which continue to accrue; and the lack of an objective basis for Music Group's claims of infringement, as demonstrated in its claim charts produced last month.  The claim charts, in particular, reveal that Music Group has no better basis today for alleging that inMusic's All-Star Guitar infringes any valid claim of the '486 Patent than existed in January 2012.  The claim charts also undercut Music Group's statement in its letter to inMusic's retailers that it had "the exclusive right to stop Ion Audio from making, selling, offering to sell and import[] products in the U.S. that violate our patent rights."  (*Exhibit C*, to the Second Amended Complaint.)  By sending these letters to inMusic's customers in December 2012, Music Group intended to damage, disrupt and otherwise interfere with inMusic's business relationships and to unfairly compete with inMusic for its business.

Because the facts giving rise to inMusic's new tort claims for intentional interference and unfair competition did not occur until after the deadline for amending pleadings, inMusic could not have asserted them prior to the July 23, 2012 deadline for amendment.  Likewise, because Music Group refused to produce claim charts prior to being ordered to do so, inMusic could not

have ascertained the bases (or lack thereof) for Music Group's infringement allegations prior to the date on which they were produced, April 23, 2013.  Under *Pioneer Int'l* and in view of these facts, because it brought this motion shortly after these events, inMusic has acted diligently and has presented "good cause" for the Court to modify the Case Scheduling Order.  Fed. R. Civ. P. 16(a)(4); *Sosa*, 133 F.3d at 1418.  Modification of the Case Scheduling Order to allow for this amendment is proper under the facts of this case.

**B.  Rule 15's Liberal Pleading Standards Permit the Second Amended Complaint**

Once a court has determined that a proposed amendment may be permitted under Rule 16, it determines whether that amendment is proper under the liberal Rule 15 pleading standards. *Nobles*, 303 F. Supp.2d. at 1283 (citing *Sosa*, 133 F.3d at 1419); *see also Smith v. Trans-Siberian Orchestra*, 728 F.Supp.2d 1315, 1318 (M.D. Fla. 2010) ("motions to amend are held to a very liberal standard").  The decision to permit an amendment is within the sound discretion of the Court; however, "the words 'leave shall be freely given' must be heeded."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Consequently, there must be a "justifying reason" for a court to deny leave.  *Id.; see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) ("unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.").  Leave to amend a pleading will be allowed unless:  (1) the amendment would be prejudicial to the opposing party, (2) there has been bad faith or undue delay on the part of the moving party, or (3) the amendment would be futile."  *Taylor v. Florida State Fair Auth.*, 875 F.Supp. 812 (M.D. Fla. 1995) (citing *Foman*, 317 U.S. at 182).  Here, Music Group has consented to this amendment in writing, so Rule 15 is satisfied.  Even without this, however, all of the *Taylor* factors have been met.

### 1)   The Amendment Will Not be Prejudicial to the Defendants

The first area of inquiry under *Taylor* is whether the proposed amendment is prejudicial to the opposing party.  In this case, Music Group has first-hand knowledge of facts that are the basis of inMusic's intentional interference and unfair competition claims asserted in the proposed Second Amended Complaint.  Music Group authored the letters and received the responses. Music Group also employs and has control over at least one witness with first-hand knowledge of these facts.  Consequently, Music Group cannot claim prejudice or unfair surprise by the Second Amended Complaint.  Moreover, the Court recently extended the deadline to complete fact discovery until October 11, 2013 (DE 110), so both parties have sufficient time to engage in discovery about the proposed new causes of action.

### 2)   inMusic Has Not Delayed or Acted in Bad Faith

Next, the Court must consider whether the party proposing the amendment has engaged in bad faith or delayed.  Here, inMusic first became aware of the facts supporting its claims for intentional interference and unfair competition claims in late December 2012 and has been dealing with its retailers to mitigate its damages ever since.  But it only recently became clear that Music Group's interfering efforts were actionable after Music Group produced its claim charts under compulsion.  Indeed, it was only after analyzing the claim charts that inMusic was able to confirm that Music Group had no basis in fact or law to allege infringement of the All-Star Guitar, which it previously was only able to suspect.  Despite inMusic's diligent effort to obtain this information earlier, Music Group resisted.  Once inMusic confirmed Music Group's allegations were truly frivolous, it filed the instant motion.

### 3)  The Amendment is Not Futile

The final factor that must be considered prior to granting a motion to amend is whether the proposed amendment would be futile.  In its Second Amended Complaint, inMusic asserts that Music Group intentionally interfered with inMusic's business relationships and engaged in unfair competition.  Under Florida law, the elements of a claim for tortious interference with an advantageous business relationship include: "(1) the existence of a business relationship or contract that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendants' intentional and unjustified interference with that relationship; and (4) damage to the plaintiff."  *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006); *Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 11(11th Cir. 2001) (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994)).  The elements of a common law claim for unfair competition under Florida law include:  (1) deceptive or fraudulent conduct of a competitor; and (2) likelihood of consumer confusion.  *Third Party Verification, Inc. v. Signaturelink, Inc*., 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007); *Whitney Info. Network, Inc. v. Gagnon,* 353 F.Supp.2d 1208, 1212 (M.D. Fla. 2005) (citation omitted).  The Second Amended Complaint contains allegations that meet all the elements of these claims.

For all of these reasons, inMusic should be permitted to amend its complaint to add the causes of action flowing from Music Group's direct communication of false and misleading information to inMusic's retailers.

### C.  **Substitution of inMusic is Proper Under Fed. R. Civ. P. 25**

Fed. R. Civ. P. 25 governs the substitution of parties during pending litigation.  *Andrews v. Lakeshore Rehab. Hosp.,* 140 F.3d 1405, 1407 (11th Cir. 1998) (citations omitted).  Fed. R. Civ. P. 25 provides, in relevant part:

> c) Transfer of Interest.  In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

The decision whether to allow substitution is discretionary.  *Nat'l Ind. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co.*, 748 F. 2d 602, 610 (11th Cir. 1984) (citations omitted).

When Ion filed suit in February 2012, it was the proper party plaintiff because Ion was a separate entity from inMusic, and because Music Group asserted the '486 Patent against Ion.  On September 28, 2012, inMusic became Ion's successor by merger.[1]  Ion remained a proper plaintiff in this suit because it was permitted under Florida law and because the facts in this case were otherwise unchanged.  Fla. Stat. Ann. § 608.4383(4) (pending claims by a party to a merger may be continued "as if the merger did not occur"… the surviving entity may be substituted, but substitution is not required).  When Music Group mailed its letters to inMusic's retailers on December 20, 2012, however, inMusic, as the corporation surviving the merger, sustained the resulting torts and damages.  As the surviving entity and the entity that incurred damages as a result of Music Group's tortious acts, inMusic is a proper party in interest, both for the declaratory and legal relief requested.  For these reasons, substitution of inMusic as the party plaintiff is proper under Fed. R. Civ. P. 25.

---

[1] This was recently confirmed in a reasoned decision by the Western District of Washington, in which the Court found that inMusic "became Ion" following the merger and dismissed Music Group's later filed Washington case in favor of the present action under the first-to-file rule. (DE 106, Ex. A at 4.)

### III.  CONCLUSION

For at least the foregoing reasons, Ion respectfully requests that the Court grant its Motion to Amend/Modify the Case Scheduling Order, to Substitute and for Leave to File a Second Amended Complaint.


Dated:  June 7, 2013                          Respectfully submitted,

                                              SHUTTS & BOWEN, LLP
                                              1500 Miami Center
                                              201 South Biscayne Boulevard
                                              Miami, Florida 33131
                                              Phone: (305) 358-6300
                                              Fax: (305) 381-9982
                                              hpatricoff@shutts-law.com

                                              By: /s/ Russell R. O'Brien
                                                  Harold E. Patricoff
                                                  Florida Bar No. 508357
                                                  Russell R. O'Brien
                                                  Florida Bar No. 084542

                                              and:

                                              DUFFY & SWEENEY, LTD.
                                              *Counsel for Plaintiff*
                                              One Financial Plaza, Suite 1800
                                              Providence, RI 02903
                                              (401) 455-0700 Telephone
                                              (401) 455-0701 Facsimile
                                              rduffy@duffysweeney.com
                                              rgreen@duffysweeney.com
                                              Robert M. Duffy
                                              Admitted *Pro Hac Vice*
                                              Rachelle R. Green
                                              Admitted *Pro Hac Vice*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on June 7th, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system which will send notice of the electronic filing on this day to all counsel of record or *pro se* parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

*/s/ Russell R. O'Brien*
Of Counsel

4840-5982-4658, v. 2
MIADOCS 7723932 1